**UNION PACIFIC RAILROAD COMPANY**

v.

**COAST PACKING COMPANY**

**No. CIV–01–01326–GHK.**

United States District Court, C.D. California.

Jan. 29, 2002.

Order Denying Reconsideration April 11, 2002.

Michael L. Whitcomb, Union Pacific Railroad, Paul D. Keenan, Philadelphia, PA, Nancy W. Carman, Nancy W. Carman Law Offices, Los Angeles, CA, for Plaintiff.

Stephan S. Smith, Greenberg Glusker Fields Claman Machtinger & Kinsella, Donald J. Sands, Sands & Lerner, Andrew D. Kehagiaras, Countryman & McDaniel, Los Angeles, CA, Stephen C. Herman, Stephen C. Herman Law Offices, Chicago, IL, for Defendant.

KING, District Judge.

**PROCEEDINGS: Plaintiff's Motion to Dismiss; Defendant's Motion for Partial Summary Adjudication**

This matter is before the court on the parties' above-titled motions. Both motions are fully briefed and appropriate for resolution without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15 (formerly Local Rule 7.11). After considering all pertinent papers filed therewith, we rule as follows:

## I. Background

On February 8, 2001, Plaintiff filed this action to collect approximately $164,750.00 in unpaid demurrage and switching charges. Compl. ¶ 8. The complaint states we have jurisdiction pursuant to 28 U.S.C. § 1337, *id.* ¶ 3, as the demurrage charges were allegedly assessed and incurred pursuant to 49 U.S.C. § 10746, *id.* ¶¶ 7, 10. On April 19, 2001, Defendant counterclaimed under 49 U.S.C. § 11704(b) for the value of goods it was unable to unload from tank cars. Countercl. ¶ 16. The goods could not be unloaded because Plaintiff allegedly failed to maintain level tracks near Defendant's Vernon, California facilities. *Id.* ¶¶ 4, 16. The failure purportedly violates the duty to provide transportation or service upon reasonable request pursuant to 49 U.S.C. § 11101(a). *Id.* ¶¶ 5–6.

On June 25, 2001, the parties submitted a Joint Status Report, wherein they again stated we have subject matter jurisdiction based on 28 U.S.C. § 1337. Joint Status Report, p. 2. In particular, Plaintiff reasserted that its claim against Defendant was pursuant to 49 U.S.C. § 10746. *Id.* Given the limited amount in controversy, we ordered the parties to exchange documents bearing on their claimed losses, directed them to participate in a mandatory settlement conference, and set November 9, 2001 as the cut-off date for discovery. *See* Minute Order (dated July 9, 2001).

As a result of the negotiations, the parties agreed to file an amended complaint, answer and counterclaim. *See* Stipulation (lodged August 30, 2001; ordered September 5, 2001). Plaintiff's first amended

complaint ("FAC") remains essentially unchanged from its original complaint, except it now seeks $215,750.00 in demurrage and switching charges. *See* FAC ¶ 8. It still bases subject matter jurisdiction on 28 U.S.C. § 1337 for demurrage charges determined and assessed pursuant to 49 U.S.C. § 10746. Likewise, Defendant's first amended counterclaim ("counterclaim") remains essentially unchanged. We extended the discovery cut-off to January 8, 2002.

## II. Plaintiff's Motion to Dismiss

Plaintiff moves to dismiss Defendant's counterclaim on the grounds that the two-year statute of limitations for § 11704(b) claims has expired. Pl.s' Mot. to Dismiss, pp. 3–4. In its opposition, Defendant acknowledges that its counterclaim rests in part on harms which occurred more than two-years ago and thus outside the statute of limitations. Def.'s Opp'n, p. 9. However, it argues that it should be able to maintain some of those claims under the theory of recoupment. *Id.* pp. 10–12.

In its reply, Plaintiff contends for the first time that the counterclaim should be dismissed for failure to state a proper claim under § 11704(b). Since the counterclaim involves the loss of goods during shipment, Plaintiff argues the sole remedy, if any, is pursuant to the Carmack Amendment, 49 U.S.C. § 11706. Furthermore, Plaintiff alleges that Defendant has failed to perfect any claim under the Carmack Amendment.

Because this latter argument is untimely, we decline to rule on the motion to dismiss at this time. Defendant shall file a response to Plaintiff's reply, in writing, by February 11, 2002. The response shall comply with the Local Rule typeface requirements and not exceed ten (10) pages in length. The response shall address the propriety of asserting the counterclaim pursuant to § 11704(b) and § 11101(a) as opposed to § 11706. In addition, should § 11706 apply, Defendant shall explain why permitting amendment would not be futile because of any attendant procedural requirements.

## III. Defendant's Motion for Partial Summary Judgment

Defendant moves for partial summary judgment on the basis that the relevant statute of limitations bars a portion of Plaintiff's claim for unpaid demurrage and switching charges.

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no dispute as to the material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see, e.g., Toscano v. Prof'l Golfers' Assoc.,* 258 F.3d 978, 982 (9th Cir.2001). On summary judgment, we view the evidence in the light most favorable to the non-movant. *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The non-movant can defeat summary judgment by demonstrating that the evidence, taken as a whole, could lead a rational trier of fact to find in its favor. *Id.* (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The parties must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Thus, a party opposing summary judgment must direct the court's attention to specific, triable facts. Hon. William W. Schwarzer, et al., Cal. Practice Guide: Federal Civil Procedure Before Trial § 14:101.1, at 14–24.2 (2001). General references without page or line numbers are not sufficiently specific. *Id.* (*citing Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988));

*see also Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001); *Forsberg v. Pac. Northwest Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir.1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").

## B. Statute of Limitations

The FAC states that the "demurrage charges were assessed pursuant to the provisions of 49 U.S.C. § 10746 and rules promulgated thereunder .... " FAC ¶ 7. "The assessed demurrage charges were determined and made applicable pursuant to rules and rates promulgated and published in accordance with 49 U.S.C. § 10746." FAC ¶ 10. These allegations are consistent with Plaintiff's original complaint, the Joint Status Report submitted by the parties, and Plaintiff's thrice repeated allegation that we have subject matter jurisdiction pursuant to 28 U.S.C. § 1337.

As Plaintiff concedes in its opposition, claims based on § 10746 are subject to the three-year statute of limitations in § 11705(a). *See* Pl.'s Opp'n, p. 2. Moreover, § 10746 claims accrue from the date of delivery or tender of delivery. *See* 49 U.S.C. § 10705(g). In its motion, Defendant identifies $62,520 in demurrage and switching charges which accrued more than three years before Plaintiff instituted this action on February 8, 2001. Plaintiff does not contest that $62,520 in charges fall outside the statutory bar or the date of February 8, 1998. Thus, Defendant is entitled to summary adjudication based on the theory of recovery Plaintiff has continuously asserted over the past year.

## C. 49 U.S.C. § 10709

■ Rather than oppose the motion on its merits, Plaintiff attempts to rewrite its complaint by claiming the charges in question were incurred pursuant to a contract formed under 49 U.S.C. § 10709. When appropriate, courts will deem new claims in opposition to a motion for summary judgment as a motion to amend the pleadings. *See, e.g., Kaplan v. Rose,* 49 F.3d 1363 (1994), *389 Orange Street Partners v. Ciarcia,* 179 F.3d 656, 665–66 (9th Cir. 1999). We find amendment at this stage unwarranted due to possible bad faith, undue delay, prejudice to the opposing party, and the futility of amendment.

■ As for bad faith and undue delay, this attempted amendment occurs after the close of discovery and in the face of a dispositive motion. This amendment cannot be the result of newly discovered evidence as Plaintiff had the relevant documents in its possession before it even brought this action. Plaintiff does not explain why it waited over a year to allege this new basis, especially in light of the parties' negotiations, the recent amendment of its complaint, and the fact the parties met and conferred regarding the substance of this motions more than twenty days before it was filed. *See* Local Rule 7–3. Plaintiff knew the position Defendant would be advancing and thus could have avoided the delay and expense of litigating this motion.

Because discovery is closed, Defendant would be prejudiced by this late amendment. Even if we reopened discovery, we find no reason to do so because amendment appears futile. The three affidavits submitted by Plaintiff in support of its new claim are conclusory, lack sufficient evidentiary basis for the propositions contained therein, and fail to indicate that Plaintiff entered into any § 10709 contracts, let alone a § 10709 contract with Defendant. The affidavits make literally no reference to § 10709. To that extent, the opposition fails to set forth specific facts showing there is a genuine issue for trial, *see* Fed.R.Civ.P. 56(e), or otherwise provide any reason for amendment. Plaintiff did not attach a single document referenced in the affidavits, which undermines

its position regarding § 10709 and violates Rule 56(e).

We also find amendment futile because this new position is inconsistent with Plaintiff's numerous assertions that we have subject matter jurisdiction pursuant to 28 U.S.C. § 1337. Section 10709 explicitly states that it "does not confer original jurisdiction on the district courts of the United States based on section 1331 or 1337 of title 28, United States Code." 49 U.S.C. § 10709(c)(2). In addition, if this action involved § 10709, the demurrage charges would not have been determined and assessed pursuant to § 10746 as alleged in both complaints. In short, Plaintiff attempts to repudiate two complaints and its previous averments to the court to allege § 10709. The inconsistency between Plaintiff's current position and its past representations are particularly telling given the complete lack of evidence offered on § 10709. Therefore, to the extent Plaintiff sought amendment to allege § 10709 instead of § 10746, we **DENY** such motion for the above-stated reasons.

### D. Disposition

Plaintiff fails to oppose the substance of Defendant's motion and then fails to offer any admissible evidence in support of its new claim or amendment. Accordingly, Defendant is entitled to partial summary adjudication. All demurrage and switching charges on all shipments delivered or tendered for delivery before February 8, 1998 are barred by 49 U.S.C. § 11705(a), (g).

### IT IS SO ORDERED.

**PROCEEDINGS: Plaintiff's Motion to Dismiss Second Amended Counterclaim; Plaintiff's Motion for Reconsideration & Leave to Amend**

These matters are before the court on the above-titled motions. The motions are appropriate for resolution without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15 (formerly Local Rule 7.11). After considering all pertinent papers filed therewith, we rule as follows:

### I. Plaintiff's Motion to Dismiss Counterclaim

Plaintiff Union Pacific Railroad Company ("Union Pacific") moves to dismiss Defendant Coast Packing Company's ("Coast") § 11101(a) claim for failure to provide transportation or service upon reasonable request. Allegedly, service was inadequate because of an out-of-level side track, which resulted in the loss of goods. Second Amended Counterclaim ("SAC") ¶¶ 5–6, 16. Union Pacific argues the two-year statute of limitations expired and that the SAC really constitutes a claim under the Carmack Amendment,[1] not § 11101(a). Because Union Pacific raised the latter argument in the reply, we allowed Coast to file a sur-reply. Coast argues it has properly alleged a § 11101(a) claim. It realizes, however, that the SAC could be construed as a claim under the Carmack Amendment, and therefore requests leave to amend to eliminate any ambiguity.

### A. Lack of Jurisdiction

We begin with the threshold question of jurisdiction. The SAC prays for damages pursuant to §§ 11101(a) and 11704(b). It is unclear whether Coast can bring a civil action for § 11101(a) damages in district court pursuant to § 11704(b). *Compare DeBruce Grain, Inc. v. Union Pac. R.R.*, 983 F.Supp. 1280, 1283–84 (W.D.Mo.1997) (holding district courts have no jurisdiction over § 11101(a) damages claims brought pursuant to § 11704(b)); *Flynn v. Burlington N. Santa Fe Corp.*, 98 F.Supp.2d 1186, 1192 (E.D.Wash.2000) (same); *Renteria v. K & R Transp., Inc.*, 1999 U.S.

---

1. 49 U.S.C. § 11706

Dist. LEXIS 22620, \*12–14, \*17 (C.D.Cal. February 25, 1999) (following *DeBruce Grain* and holding a parallel statutory section did not create a private right of action for damages in district court "without first obtaining an agency order."); *Laredo v. Tex. Mex. Ry.*, 935 F.Supp. 895, 898 (S.D.Tex.1996) ("[A] person may file suit in federal court [under § 10704(b) ] only to enforce an order of the Board, to recover overcharges or to recover under a bill of lading."); *with Pejepscot Indus. Park, Inc. v. Ma. Cent. R.R.*, 215 F.3d 195, 205 (1st Cir.2000) (rejecting *DeBruce Grain* and holding district court had jurisdiction over § 11101(a) damage claim).

We need not resolve this split of authority. For purposes of this motion, even if Coast can bring a § 11101(a) damage claim under § 11704(b), we nevertheless lack jurisdiction. Section 11704(b) states that a "rail carrier providing transportation *subject to the jurisdiction of the [Surface Transportation] Board* under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part[,]" including failure to provide service in compliance with § 11101(a). *Id.* (emphasis added). "A person may ... bring a civil action under [§ 11704(b) ] to enforce liability against a rail carrier *providing transportation subject to the jurisdiction of the Board* ...." 49 § 11704(c)(1) (emphasis added).

■ Here, Coast alleges a § 11101(a) claim for inadequate service with respect to a side track. SAC ¶¶ 8–10, 12–18. Rail carriers such as Union Pacific can abandon or discontinue service over side tracks without prior authorization. *Valley Feed Co. v. Greater Shenandoah Valley Devel. Co.*, 1995 I.C.C. LEXIS 323, at \*18 (December 11, 1995); *see also* 49 U.S.C.

§ 10906. The Surface Transportation Board ("STB") cannot require a carrier to provide service over side tracks or award damages for "failure to provide service over a spur or side track." *Id.* As a result, the STB lacks jurisdiction over § 11101(a) claims involving side tracks. *Battaglia Distrib. Co. v. Burlington N. R.R.*, 1998 STB LEXIS 957 (November 30, 1998); *Friends of Richards–Gebaur Airport v. FAA*, 251 F.3d 1178, 1193 (8th Cir.2001); *Hughes v. Consol–Penn. Coal Co.*, 945 F.2d 594, 612 (3d Cir.1991); *but see United Transp. Union–Ill. Legislative Bd. v. STB*, 183 F.3d 606, 612–13 (7th Cir.1999). Because § 11705(b) and (c)(1) only permit civil actions for "transportation subject to the jurisdiction of the" STB, and the STB lacks jurisdiction over § 11101(a) claims involving side tracks, we also lack jurisdiction.

Moreover, Defendant's § 11101(a) cases do not reveal a basis for jurisdiction. The cases do not involve denials of service relating to side tracks. *See, e.g., DeBruce Grain*, 983 F.Supp. 1280 (failure to provide grain cars); *Iowa Beef Processors, Inc. v. Ill. Cent. Gulf R.R.*, 685 F.2d 255 (8th Cir.1982) (failure to provide meat hooks); *Winnebago Farmers Elevator Co. v. Chi. & N.W. Transp. Co.*, 354 I.C.C. 859 (1978) (regarding service over 24.6 mile rail line); *Overbrook Farmers Union Coop. Ass'n*, 5 I.C.C.2d 316 (1989)[2] (service along 40.1 mile branch line); *see also Bloomer Shippers Ass'n v. ICC*, 679 F.2d 668 (7th Cir. 1982) (63 mile segment of branch line); *but see Pejepscot*, 215 F.3d 195. The one case which mentions a side track and/or spur, *Pejepscot*, also involved service over a rail line. The court did not distinguish between the duty to provide service over the rail line in general and the spur line in

2. *Overbrook Farmers Union Coop. Ass'n v. Mo. Pac. R.R.*, 21 F.3d 360 (10th Cir.1994) in

volved service over the same branch line.

particular. Consequently, *Pejepscot* does not support our exercise of jurisdiction.

The STB lacks jurisdiction to hear Coast's § 11101(a) claim relating to service over a side track, and thus we lack jurisdiction as well. Union Pacific's motion to dismiss the SAC is **GRANTED**, with prejudice, for lack of subject matter jurisdiction and/or failure to state a claim.[3]

### B. The Carmack Amendment

■ Assuming we have jurisdiction to hear damage claims pursuant to §§ 11101(a) and 11704(b), and assuming we can entertain § 11101(a) claims involving side tracks, we conclude Coast has not, in fact, brought a claim under § 11101(a). Rather, Coast has brought a claim within the purview of the Carmack Amendment. Though the SAC describes the failure to level the side track as a failure to provide service upon reasonable request, Coast prays "for judgment ... in the amount of the value of the edible lard, tallow and vegetable oils [Coast] lost the use of during the period 1993 through the present time ...." *SAC* at p. 4.

■ Congress intended the Carmack Amendment to be the sole remedy for property lost or damaged during shipment. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir.1998). The Carmack Amendment is "comprehensive enough to embrace responsibility for *all losses* resulting from *any* failure to discharge a carrier's duty as to *any part* of the agreed transaction." *Taylor v. Mayflower Transit, Inc.*, 22 F.Supp.2d 509, 510 (W.D.N.C.1998) (*quoting Ga., Fla. and*

*Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196, 36 S.Ct. 541, 60 L.Ed. 948 (1916)). It encompasses harms caused by the late arrival of goods, *see Southeastern Exp Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936), when a carrier unloads the wrong product into a storage tank, *see Air Prods. & Chems., Inc. v. Ill. Cent. Gulf R.R.*, 721 F.2d 483 (5th Cir. 1983), when chemicals are spilled during unloading, *see V.R. Compounding Corp. v. Occidental Chem. Corp.*, 2000 WL 1368045 (N.D.Ill.2000), by abusive conduct during the claims-handling process, *see Taylor*, 22 F.Supp.2d 509, and when a product never arrives because it was shipped to the wrong location, *see Consol. Rail Corp. v. Primary Indus. Corp.*, 868 F.Supp. 566 (S.D.N.Y.1994).

If the Carmack Amendment covers chemical spills and unloading mishaps, *see Air Prods. & Chems.*, 721 F.2d 483; *V.R. Compounding Corp.*, 2000 WL 1368045, then it surely applies to losses caused during unloading by an out-of-level side track. Furthermore, we see no reason to ignore the prayer when construing the nature of Coast's SAC. Since Coast admittedly cannot satisfy the jurisdictional prerequisites for a Carmack Amendment claim, Def.'s Sur–Reply, p. 9 n. 5, we DISMISS the SAC on this independent and alternative basis.

### C. Statute of Limitations

Given our conclusions above, the arguments relating to the statute of limitations are moot.[4]

---

**3.** To the extent that we have subject matter jurisdiction for this action by reason of the remaining demurrage charge claim in *Union Pacific's complaint, our decision can alternatively be seen* as holding that § 11704(b) and (c)(1) do not give rise to any private right of action under the circumstances of this case. Therefore, the SAC must be dismissed for

failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

**4.** We note that Coast did not properly assert its counterclaim by way of recoupment. *See Reiter v. Cooper*, 507 U.S. 258, 264, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

## D. Amendment

Recognizing the potential Carmack Amendment problem, Coast requests leave to amend.[5] While Coast vehemently opposes Union Pacific's request for amendment, almost all of Coast's arguments apply with equal force to itself. *See* Def.'s Opp'n to Mot. for Recon., pp. 12–14.[6] Coast previously amended its counterclaim, enjoyed the benefits of substantial discovery prior to the filing of this motion, and had all the relevant facts within its possession before the commencement of this action.

■ Coast now wants to "substitute a different calculation so as to avoid any implication of Carmack." We will not permit amendment merely to plead around Carmack. Moreover, Coast has not explained what harms it could allege other than the loss of goods. If Coast attempts to recover damages different in nature from those previously asserted, Union Pacific would need further discovery as it had no opportunity or reason to inquire about damages other than those relating to lost goods. Because discovery has largely concluded, the attendant costs and delays would be "highly prejudicial" to Union Pacific. *See* Def.'s Opp'n to Mot. for Recon., p. 13.

In addition, amendment would be futile in light of our conclusion that we lack jurisdiction to entertain § 11101(a) claims involving side tracks. Consequently, for all of the above-stated reasons, Coast has failed to show why amendment should be permitted. Any such request is hereby **DENIED.**

**5.** Coast did not formally move for leave to file an amended complaint.

**6.** For example, Coast argues Union Pacific should have "paid greater attention to the nature of its claim from day one[,]" rather than wait until a dispositive motion. *Id.* p. 12. Like Coast, Union Pacific could object to the "time, effort and expense of preparing

## II. Plaintiff's Motion for Reconsideration & Amendment

In a minute order dated January 28, 2002, we granted Coast's motion for partial summary judgment. In addition, we denied Union Pacific's implicit request for amendment. Union Pacific moves for reconsideration of that minute order pursuant to Federal Rules of Civil Procedure Rule 59(e). Because we did not enter a judgment against Union Pacific, we construe its motion as one for reconsideration pursuant to Local Rule 7–18.

### A. Reconsideration Standard

Motions for reconsideration may be granted only when the moving party presents:

(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

Local Rule 7–18.

The moving party must demonstrate one of the above conditions in order to have us reconsider the motion. "[A] mere attempt by [the moving party] to reargue its posi-

and briefing" the instant motion to dismiss, *id.* p. 13, especially since, in the past year, "the parties attended a settlement conference, asked for the proceedings to be held in abeyance and over the course of two months negotiated in an attempt to settle through the exchange of documents, arguments and information . . . ." *Id.* p. 14.

tion by directing this Court to additional case law and ... argument[s] which [it] clearly could have made earlier, but did not ... is not the purpose of motions for reconsideration under" Local Rule 7–18. *Yang Ming Marine Transport Corp. v. Oceanbridge Shipping Int'l, Inc.*, 48 F.Supp.2d 1049, 1057 (C.D.Cal.1999).

Here, Union Pacific's motion allegedly falls within Local Rule 7–18(c)—manifest failure to consider facts in the record. Union Pacific claims our minute order "was premised on a mistake of fact" regarding the discovery cut-off date. It claims we also "improperly weighed the evidence" when ruling on the summary judgment motion. Union Pacific believes these errors warrant reconsideration of our order granting partial summary judgment and denying the implied request to amend.

### B. Reconsideration with respect to summary judgment

We did not rely upon the discovery cut-off date in any manner when ruling upon the motion for summary judgment. We ruled based on the uncontroverted evidence submitted by the parties. We had no need to weigh evidence because Union Pacific submitted no admissible evidence in opposition to the motion.[7]

Union Pacific's three declarations were hearsay, based on unauthenticated documents and violated Rule 56(e). Every averment in the declarations relied upon an alleged review of documents by two of Union Pacific's attorneys and one of its employees. The documents are statements other than those made by the declarants being offered "to prove the truth of the matter asserted." Fed.R.Evid.

801(d). As such, the declarations do not contain testimony which would be admissible at trial.[8]

Even if the declarations were not entirely hearsay, Union Pacific made no attempt to authenticate the underlying documents. "Authentication is a 'condition precedent to admissibility' .... [U]nauthenticated documents cannot be considered in a motion for summary judgment." *See Orr v. Bank of Am.*, 282 F.3d 1099 (9th Cir.2002).

Regardless, Union Pacific violated Federal Rules of Civil Procedure Rule 56(e), which requires parties to attach copies of documents referred to in declarations. Fed.R.Civ.P. 56(e). We may disregard declarations submitted in violation of Rule 56(e), even if they contain some admissible evidence within a declarant's personal knowledge. *See School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1261–62 (9th Cir.1993) ("[A]n affidavit of a witness is not exempt from Rule 56(e)'s attachment requirement simply because the affidavit references documentary evidence *and* personal knowledge. If documentary evidence is cited as a source of a factual contention, Rule 56(e) requires attachment. There was no attachment. The district court did not abuse its discretion in excluding the ... affidavit."). Union Pacific's declarations depended entirely upon documents which were never submitted. Even if they contained some admissible evidence, we were within our discretion in excluding them pursuant to Rule 56(e).

Consequently, Coast was entitled to partial summary judgment based on the uncontroverted evidence before us.

*See Yang Ming Marine Transport. Corp.*, 48 F.Supp.2d at 1057.

---

7. Plaintiff describes the motion for summary judgment as "premature." It did not originally object to the motion on this basis. Therefore, it cannot now raise that argument.

8. Union Pacific provided no foundation for a hearsay exception.

## C. Reconsideration with respect to amendment

*Union Pacific did not request leave to amend in opposition* to Coast's motion for partial summary judgment. Union Pacific simply argued in support of a claim which it had never previously raised. We *sua sponte* treated Union Pacific's argument as an implied request to amend the complaint. When considering the request, we misstated the discovery cut-off. This was a factor in denying the implied motion to amend. It was not, however, the only factor, nor was it necessary to our holding.

In general, the four factors relevant to amendment are bad faith, undue delay, prejudice to the opposing party, and futility. *See Royal Ins. Co. v. Southwest Marine*, 194 F.3d 1009, 1016 (9th Cir.1999) (*citing Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994)). In particular, we view motions to add new theories unfavorably when the "facts and the theory have been known to the party seeking amendment since the inception of the" case. *See id.* at 1016–17 (*quoting Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986)).

Despite the fact that Union Pacific waited until after summary judgment to formally move for amendment, it fails to adequately support the current motion with substantial reasoning or law. Other than referencing our order, it does not separately discuss the four factors relevant to amendment. We find this reason enough to deny this late request.

Even if we reconsider the merits, we find no reason to permit amendment.[9] Union Pacific seeks to add a claim which contradicts allegations in the original complaint, first amended complaint, and the Joint Report of the Parties' Rule 26(f) Conference. By submitting those documents, Union Pacific represented to this court that the allegations and arguments therein were made "to the best of [its] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ." Fed.R.Civ.P. 11(b). Union Pacific waited until its opposition to the motion for summary judgment to contradict these representations. We consider this indicative of bad faith dilatory tactics.

Union Pacific suggests that determining whether the complaint arose under § 10709 or the Interstate Commerce Act was largely "academic", since in either case, the unpaid demurrage fees would be the same. Rather than assuage our concerns, Union Pacific's excuse supports our conclusion regarding possible bad faith. The basis of Union Pacific's claim is not academic because we do not have jurisdiction over § 10709 contracts pursuant to the Interstate Commerce Act. While we appear to have diversity jurisdiction, the exact basis of jurisdiction is relevant because, according to Union Pacific, it alters the applicable statute of limitations. *See* Pl.'s P. & A. in Supp. of Mot. for Recon. ("Pl.'s P. & A."), pp. 2, 5; *see also* Pl.'s Opp'n to Def.'s Mot. for Sum. J., pp. 2, 3, 5. Union Pacific thus had every reason to determine the nature of its claim prior to the motion for summary judgment.

Union Pacific next claims it was not careless, but was under a "mistaken belief" that the contracts arose under the Interstate Commerce Act. Pl.'s P. & A., p. 2. "[O]ne must trace each rail car backwards to see the terms under which the shipper sent the rail car to Coast. This requires a significant investigation . . . ." *Id.* pp. 2–3. We do not understand why Union Pacific should be permitted to wait until the penultimate hour to perform research necessary to determine the viability of its complaint. Union Pacific, not Coast, was a party to all of the relevant shipping con-

---

9. We offer this discussion to supplement the reasoning in our original order.

tracts and had access to the relevant documents before this action commenced. Pl.'s Mot. for Recon., p. 3, at ¶ 8. Coast should not bear the burdens of additional discovery, litigation costs and delays because of Union Pacific's strategic choice to assume facts without investigation.

Union Pacific implies that it could not determine the nature of the contract until Coast produced certain documents. This is counterintuitive because, as explained above, Coast was not a party to the contracts upon which Union Pacific relies. One would expect Union Pacific, as the carrier, to know the origin of rail cars shipped to Coast. In any event, Union Pacific's declarations were based upon an alleged review of documents already in its possession, so it had the evidence it needed to seek amendment before the summary judgment motion.

Though we do not consider the delay alone dispositive, the prejudice to Coast is obvious. Coast had no reason to conduct discovery regarding the existence and nature of alleged shipping contracts that were never previously placed at issue. Coast completed its paper discovery before the discovery cut-off, and thus would be prejudiced by a late amendment. Def.'s Opp'n, p. 13. Furthermore, amendment would complicate this action by replacing one uniform limitation period with various state limitation periods.

As for futility, we did not intend to suggest that Union Pacific had a duty to meet Rule 56's evidentiary standard to justify amendment. Still, we have nothing, other than conclusory statements in improperly submitted affidavits,[10] which would indicate that amendment would be anything other than futile.

Accordingly, for the reasons stated above and in our original order, Union

10. *See* Fed.R.Civ.P. 56(e).

Pacific's motion for amendment is hereby **DENIED.**

### III. Disposition

Union Pacific's motion to dismiss the SAC is hereby **GRANTED,** with prejudice, for lack of subject matter jurisdiction and failure to state a claim. Union Pacific's motions for reconsideration and amendment are **DENIED.** Coast's request for attorneys' fees is **DENIED.**

**IT IS SO ORDERED.**